## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

U.S. ENERGY EXPL. CORP.,

        *Plaintiff,*

  vs.

DIRECTIONAL DRILLING SYSTEMS, L.L.C.,

        *Defendant.*

Case No. 6:21-CV-1055-EFM-KGG

## MEMORANDUM AND ORDER

Plaintiff U.S. Energy Exploration Corp. ("US Energy") filed suit against Defendant Directional Drilling System ("DDS") asserting claims for breach of contract, foreclosure of liens, and unjust enrichment. DDS filed an Answer and Counterclaim asserting five claims. US Energy is now before the Court with a Motion to Dismiss Count V of that Counterclaim, which asserts a claim for attorney fees under K.S.A. § 60-3323 (Doc. 11). US Energy argues that DDS fails to state a claim pursuant to Fed. R. Civ. Pro. 12(b)(6). The Court agrees, and thus the motion is granted, and Count V of DDS's Counterclaim is dismissed.

## I.      Factual and Procedural Background[1]

For the purposes of this order, the Court will only briefly set forth the necessary factual background.  DDS and US Energy are embroiled in a business dispute involving their joint property interest in oil and gas leases and whether a joint operating agreement exists between the parties.

In November 2016, US Energy filed a petition against DDS (the "2016 lawsuit") in Butler County alleging, among other things, that it had been "damaged by DDS's wrongful use of the jointly owned seismic data acquired from Source Energy."  The court granted DDS summary judgment on one of US Energy's claims, dismissed the seismic data claim due to US Energy's failure to provide evidence of damages, and allowed one claim to remain.

In April 2018, US Energy and DDS reached a settlement agreement which settled "all of their disputes" and "release[ed] and waiv[ed] 'all liabilities, actions, claims, demands or lawsuits which [the parties] may have had or presently has against [each other] arising from or in any way related to the [Butler County Assets]."  Pursuant to this agreement, the parties agreed to dismiss the lawsuit in its entirety with prejudice.

US Energy sued DDS again in July 2018 in Butler County, alleging a breach of the settlement agreement, breach of fiduciary duties, and misappropriation of US Energy's trade secrets under the Kansas Uniform Trade Secrets Act ("KUTSA")[2] (the "2018 lawsuit").  The court granted DDS summary judgment on US Energy's claim for breach of the settlement agreement.

---

[1] The facts are taken from the Counterclaim and are stated in the light most favorable to DDS, the non-moving party.

[2] K.S.A. § 60-3320 *et seq*.

The court then granted judgment on the pleadings for the KUTSA claim stating that US Energy must first get the prior dismissal order set aside to move forward with the claim.[3]

In February 2019, US Energy filed a motion to set aside the dismissal with prejudice of the 2016 lawsuit.  On February 5, 2021, the court denied the motion.[4]

On February 23, 2021, DDS filed a Complaint in the United States District Court for the District of Kansas.[5]  It alleged multiple claims including two declaratory judgment requests, a claim for breach of the joint operating agreement, an accounting claim, and a claim for attorney fees under KUTSA.

On February 24, 2021, US Energy filed another lawsuit in the Butler County District Court, alleging claims against DDS for breach of contract, foreclosure of liens, and unjust enrichment. On February 25, 2021, DDS removed the case to this Court, and this case is the one currently before the Court.  On March 16, 2021, DDS filed its Counterclaim asserting five claims, including one for attorney fees under KUTSA.[6]

Specifically, DDS alleged that US Energy's KUTSA claim in the 2018 lawsuit was brought in bad faith because US Energy could not recover on the claim.  DDS alleged that US Energy could not recover on the KUTSA claim because (1) the Butler County court had previously dismissed

---

[3] US Energy dispute the grounds for dismissal. US Energy claims that the district court found that at least some of US Energy's claims were barred by the parties' settlement of the 2016 lawsuit but rather than determining which claims were barred, including a claim by DDS for attorney fees under KUTSA, the district court instead dismissed the 2018 lawsuit without prejudice and directed US Energy to file a motion seeking to set aside the dismissal of the 2016 lawsuit.

[4] US Energy states that the district court's decision is currently on appeal with the Kansas Court of Appeals.

[5] Case No. 21-1051-EFM-KGG.

[6] DDS's Counterclaim appears identical to the Complaint filed in Case No. 21-1051.  After DDS asserted its counterclaims in this case, it voluntarily dismissed Case No. 21-1051.

the Seismic Data claim brought in the 2016 lawsuit; (2) US Energy had released and waived any and all of its Seismic Data Claims in the Settlement Agreement; (3) US Energy dismissed the 2016 lawsuit with prejudice, which included this claim; and (4) the seismic data was not a "trade secret" within the meaning of KUTSA.  Thus, DDS alleged it was entitled to attorney fees.

US Energy has now filed a motion to dismiss this counterclaim, for failure to state a claim, arguing that DDS cannot assert an independent claim for attorney fees under KUTSA.

## II.    Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[7]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[8]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[9]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[10]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[11]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[12]  If the allegations in the

---

[7] Fed. R. Civ. P. 12(b)(6).

[8] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[10] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[11] *Iqbal*, 556 U.S. at 678–79.

[12] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

-4-

complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" [13]

### III.    Analysis

US Energy argues that DDS's counterclaim for attorney fees should be dismissed because it is not an independent cause of action. There is no Tenth Circuit of District of Kansas caselaw that is cited or that we could discover allowing a standalone claim for attorney fees to move forward. DDS argues that caselaw from surrounding jurisdictions permits such a claim, and even if not, no relevant caselaw disallows it. Additionally, DDS argues that based on its interpretation of KUTSA, the language of the statute itself allows for an independent cause of action.

K.S.A. § 60-3323 states, "If (i) a claim of misappropriation is made in bad faith, (ii) a motion to terminate an injunction is made or resisted in bad faith, or (iii) willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party."[14] On its face, the statute does not clearly state whether an independent cause of action for attorney fees would be allowed.

DDS cites multiple cases from surrounding jurisdictions to show that courts have allowed independent claims for attorney fees to move forward.[15] DDS also points to one case in the District of Kansas, *Andrew Corp. v. Van Doren Indus., Inc.*, which allowed a counterclaim for attorney

---

[13] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[14] K.S.A. § 60-3323.

[15] *See Ruby Slipper Café, LLC v. Belou*, 2019 WL 1254897, at *13 (E.D. La. 2019) (allowing a defendant's counterclaim for attorney fees where the plaintiff filed an action for misappropriation of trade secrets); *Wyndham Vacation Resorts, Inc. v. Wesley Fin. Grp., LLC*, 2013 WL 785938, at *12 (M.D. Tenn. 2013) (holding that the defendant's counterclaim for attorney fees would not be dismissed until there was a determination of the plaintiff's underlying trade secret claim in the same case); *Greif, Inc. v. MacDonald*, 2007 WL 679040, at *4 (W.D. Ky. 2007) (allowing a counterclaim for attorney fees in an action where plaintiff had filed a trade secret claim).

fees.[16]  The caselaw DDS provides, however, does not support an independent cause of action for attorney fees in separate litigation.  Rather than supporting DDS's argument that standalone claims for attorney fees have prevailed, each case shows that these types of claims have *only* been brought when they are brought in response to a substantive trade secret misappropriation claim.  The caselaw DDS cites demonstrates that parties bring a related claim for attorney fees under a trade secret statute *at the same time and in the same action* as the opposing party asserting a claim for misappropriation of trade secrets.  DDS has provided no case law for which a claim for attorney fees under any trade secret act been brought where no other trade secret claim exists.

In contrast, US Energy directs the Court to cases from several jurisdictions showing that courts have not allowed an independent cause of action for attorney fees in a separate lawsuit from the underlying misappropriation claim or trade secret litigation.[17]  Although these cases are merely persuasive, they do show that independent claims have not been successful.  In sum, case law demonstrates that a cause of action for attorney fees, separate from the underlying misappropriation or trade secret claim, is not allowed.

---

[16] 1990 WL 136779, at *5 (D. Kan. 1990) (allowing the defendant's counterclaim for attorney fees to survive in response to the plaintiff's claim for misappropriation of trade secrets but ultimately dismissing because the plaintiff's misappropriation claim was not brought in bad faith).

[17] *See Pinebrook Holdings, LLC v. Narup*, 2020 WL 871578, at *9 (E.D. Mo. 2020) (holding that there is no statutory cause of action for attorney fees under the Defend Trade Secrets Act); *Peek v. Whittaker*, 2014 WL 2154965, at *8 (W.D. Penn. 2014) (holding that there is no standalone cause of action for attorney fees in a separate lawsuit separate from the underlying misappropriation claim under the Pennsylvania Uniform Trade Secrets Act ("PUTSA")); *see also Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 40 F. Supp. 3d 437, 455-56 (E.D. Pa. 2014) (holding that PUTSA does not authorize an independent cause of action for attorney fees (citing *Peek*, 2014 WL 2154965, at *8)); *Lamb v. Dobson Cellular Sys.*, 2006 WL 1360859, at *3-4 (Ky. Ct. App. 2006) (finding that no independent claim for attorney fees could be brought, that the proper procedure would be for the party to move for attorney fees after receiving a favorable judgment in the underlying suit, and even if independent claim could be brought, the party was not entitled to fees because it was not the "prevailing party").

The current case does not involve a claim for misappropriation of trade secrets or any substantive misappropriation claim.  Instead, US Energy brought claims for breach of contract, foreclosure of liens, and unjust enrichment.  DDS does not provide the Court with caselaw that an independent counterclaim for attorney fees in such a situation has been upheld by courts, in Kansas or otherwise.

The Court's analysis of a statute begins with the plain meaning of the statutory language.[18] Determining legislative intent is key for interpreting statutes.  "The most fundamental rule is that the intent of the legislature governs if that intent can be ascertained."[19]  "When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it."[20]  If the plain language of the statute is "less than clear or is ambiguous,"[21] the Court then moves to "statutory construction and use[s] the canons of construction and legislative history and other background considerations to divine the legislature's intent."[22]  However, DDS skips the plain language reading and jumps to statutory construction.  DDS compares K.S.A. § 60-3323 to other Kansas statutes involving bad faith and argues that this comparison shows the legislature intended to create a separate cause of action for attorney fees.  It alleges that when the Kansas legislature does *not* intend to create a separate cause of action, it adds language requiring the court to first decide the issue of bad faith,

---

[18] The Court will "afford weight to Kansas'[s] rules of statutory construction not only because they assist in ascertaining the intended meaning and application of the statute, but because they also embody substantive state policies." *Browning v. Cohen, McNeile & Pappas, P.C.,* 2012 WL 4210626, at *4 (D. Kan. 2012) (quoting *Phelps v. Hamilton,* 59 F.3d 1058, 1071 (10th Cir. 1995)).

[19] *Univ. of Kan. Hosp. Auth. v. Bd. of Cnty. Comm'rs of Unified Gov't of Wyandotte Cty./Kansas City*, 49 Kan. App. 2d 449, 313 P.3d 60, 63 (2013) (quotation marks and citations omitted).

[20] *State v. Urban*, 291 Kan. 214, 239 P.3d 837, 839 (2010).

[21] *Ambrosier v. Brownback,* 304 Kan. 907, 375 P.3d 1007, 1010 (2016).

[22] *Id.*

such as "where the court finds bad faith" or "only if the court finds bad faith."  If this language is not present – as is the case in K.S.A § 60-3323 – DDS interprets this to mean that the legislature intended to create an independent cause of action.  It is not clear how DDS's analysis of legislative intent supports its conclusion but regardless, the Court disagrees with this interpretation.  DDS is looking for language that does not exist and discerning meaning from that absence.  Courts "[w]hen interpreting a statute . . . must give effect to its plain and unambiguous language [and] will not read into the statute words not readily found there."[23]

Here, K.S.A. § 60-3323(iii) provides that "*the court* may award reasonable attorney's fees to the prevailing party."[24]  By using the words "the court" rather than "a court," the statute can reasonably be read to mean the court where the misappropriation claim was asserted and is being adjudicated.  Thus, even if § 3323 provides a separate cause of action for attorney fees, it is only allowed in connection with the underlying misappropriation claim.  If "a court" were able to award attorney fees under K.S.A. § 60-3323 for misappropriation claims brought in bad faith, rather than "the court," significant logistical issues would ensue.[25]  This Court would be required to make a determination of bad faith in a case over which it did not preside.  In addition, there is a provision under K.S.A. § 60-3323 that the prevailing party may obtain attorney fees.  The court where the original action is brought is in the best position to determine which party prevailed, rather than

---

[23] *Northwest Centre, LLC v. Nat'l Am. Univ.*, 2020 WL 4200826, at *1 (D. Kan. 2020) (quoting *State v. Arnett*, 307 Kan. 648, 413 P.3d 787, 791 (2018)).

[24] K.S.A. § 60-3323(iii) (emphasis added).

[25] The logistical issues present themselves in this case as well because the parties disagree as to the posture of the dismissal of the 2018 lawsuit and to some extent whether a KUTSA claim was asserted in the 2016 lawsuit.  In any event, if the 2018 case is currently on appeal with the Kansas Court of Appeals, and the court reverses the district court's decision, it would appear that US Energy's trade secret claim may be able to go forward. Then, DDS's basis for its claim here may no longer be valid.  In addition, the Court notes that US Energy states that DDS asserted a claim for attorney fees under KUTSA in the 2018 lawsuit when US Energy asserted a KUTSA claim for misappropriation.  Thus, it would appear that the claim or request for fees should occur in that district court.

leaving such a determination to an entirely different court.  In sum, the language of the statute does not show legislative intent to create an independent cause of action brought apart from the misappropriation claim.  Accordingly, US Energy's Motion to Dismiss DDS's Counterclaim V is granted.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Dismiss Counterclaim V (Doc. 11) is **GRANTED.**

**IT IS SO ORDERED.**

Dated this 26th day of July, 2021.


ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE