IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

U.S. ENERGY EXPL. CORP.,

    *Plaintiff*,

vs.

DIRECTIONAL DRILLING SYSTEMS, LLC,

    *Defendant*.

Case No. 21-1055-EFM

**MEMORANDUM AND ORDER**

    Plaintiff U.S. Energy Expl. Corp. and Defendant Directional Drilling Systems, LLC entered into an agreement to resolve their long-standing business dispute which has spawned multiple lawsuits, but the parties disagree as to some of the details of that agreement. Defendant has moved to enforce a Consent Judgment which would grant Plaintiff all of the relief it has claimed in the action. (Doc. 44). Plaintiff then moved to enforce a settlement agreement pursuant to a draft Journal Entry it has now submitted to the Court. (Doc. 45). The Court grants Defendant's motion and denies Plaintiff's.

    **I.**    **Factual and Procedural Background**

    Plaintiff commenced the present action by filing a Petition in Butler County, Kansas District Court on February 24, 2021, raising claims for breach of contract, foreclosure of liens, and unjust enrichment. After removing the action to this Court, Defendant dismissed a separate

action it had brought against Plaintiff,[1] and advanced various counterclaims against Plaintiff in the present action.

On November 24, 2021, Plaintiff filed its answer to Defendant's counterclaims in this action, in a pleading entitled "PLAINTIFF'S ANSWER TO DEFENDANT'S ADDITIONAL COUNTERCLAIMS AND RESTATEMENT OF CLAIMS PREVOIUSLY PLED." As the title suggests, the pleading does more than simply respond to specific allegations in Defendant's counterclaims. After those responses, and setting out its potential affirmative defenses, the pleading contains an additional section stating that Plaintiff had previously advanced counterclaims of its own in response to Defendant's separate actions, later consolidated with this action.[2]

Plaintiff stated it provided the separate Restatement of Claims Previously Pled "[i]n order to preserve the counterclaims it properly and timely asserted" in those actions. The Restatement includes two claims. Under the heading "COUNT III – Partition (Joint Property)," Plaintiff alleged that "US Energy and DDS are the undivided owners of the Joint Property in 60/40 shares, respectively, including all wellbores, equipment, fixtures, contracts, agreements, permits, and other property located thereon, appurtenant thereto, or used or obtained in connection with the operation thereof." The pleading defines "Joint Property" to include the oil and gas leases and a salt water disposal system identified in a 2015 assignment. Plaintiff asked the Court to partition the joint property, pursuant to K.S.A. 60-1003, by appraisal, sale, and division of proceeds.

---

[1] Case No. 21-1051-EFM.

[2] Case Nos. 21-1231-EFM and 21-1232-EFM.

Plaintiff also included in the Restatement, as Count IV, an Enforcement of Lien claim. Plaintiff sought an order from the Court requiring that any partition proceeds attributable to Defendant's interest be impounded by the Court and applied to satisfy the lien and debt secured by the lien.

On February 14, 2022, Defendant's counsel called Plaintiff's counsel and stated that Defendant wanted to enter a consent judgment. He said that after nearly ten years of continuing litigation, Defendant was ready to be done. Plaintiff's counsel said that he'd get with his client and respond. No other details about what the journal entry for a consent judgment would entail were discussed.

The next day, Plaintiff's counsel sent Defendant's counsel a letter asking that the parties file a joint notice to the Court that the parties agreed "on the entry of a consent judgment." The enclosed notice stated that the agreement includes Defendant "withdraw[ing] it's [sic] counter-claims" and the "entry of a consent judgment [against Defendant] based on the claims asserted by the plaintiff in this action."

Defendant's counsel responded on February 18, 2022 stating "we are reluctant to say we've reached an agreement until we see the consent judgment," and suggested informing the Court the parties "are working on finalizing a consent judgment." Plaintiff's counsel responded, "How about telling the court that DDS has agreed to entry of a Consent Judgment and we are working on the Journal Entry of Judgment to be submitted." Defendant's counsel responded, "That works."

On February 22, Defendant's counsel notified the Court that it had agreed to the entry of a consent judgment, that Plaintiff was preparing the journal entry, and that the parties planned to submit it shortly.

Plaintiff's counsel sent its proposed draft of a journal entry, noting it had not yet obtained client approval. It was not a consent judgment. Instead, the proposed journal entry required Defendant to assign funds currently being held in suspense by a third party (Maclaskey Oil Services), and required Defendant to assign its interest in the Joint Property to Plaintiff, valuing that interest at $40,000.

Defendant's counsel responded that the proposed journal entry was not a consent judgment, but was a counter-offer to Defendant's offer to enter a consent judgment, which Defendant rejected. Defendant sent its proposed consent judgment to Plaintiff on March 29, 2022. Plaintiff's counsel stated he was okay with what was proposed, but he needed his client's consent.

On April 2, 2022, Defendant's counsel wrote that "[r]egarding the jointly-owned leases, we'd propose putting those in an auction, rather than taking it to a sheriff's sale." If that was agreeable, language to that effect would be added to the consent judgment.

Plaintiff responded that same day, indicating that absent some other agreement "the next step would be to sell DDS' working interest at auction."

On April 5, 2022, Defendant's counsel responded, acknowledging that the partition claim should be included in the consent judgment, but stating that "it would not just be DDS's interest [but] would also include US Energy's interest."

Plaintiff's counsel responded the next day, stating that "DDS offered to consent to judgment in February, and US Energy agreed at that time," but complained "this process is taking entirely too long." Counsel asserted that "[t]he partition counts were filed by DDS, not US Energy as implied [in the email string] below, and those claims will be dismissed with all of DDS'[s] other counts as part of the consent judgment."

Defendant's counsel responded on April 7, 2022 stating that his client "agreed to a consent judgment, nothing more," and complaining that Plaintiff was seeking to add additional terms to the agreement. Counsel stated that "US Energy did assert a partition claim. (Doc. 35)  A consent judgment  includes judgment on US Energy's claims, including the partition claim."

Plaintiff's counsel responded on the same day, stating "I think you are right that we asserted a partition claim, but that was just to roll in the other interconnected assets omitted from your partition actions.  We view that as procedural, however, please revise the consent judgment however you see fit."

Defendant sent a proposed consent judgment on April 14, 2022.  Plaintiff's counsel responded that "this looks good" and that he would consult with his client regarding the terms.

On April 20, 2022, Plaintiff's counsel responded, stating that his client approved everything in the consent judgment, except for judgment on Plaintiff's partition claim and the inclusion of its interest in the partition sale.

During a phone conference on April 20, Defendant's counsel stated that since Plaintiff did not want to sell its interest, Defendant would be willing to assign its interest to Plaintiff along with the money being held by Maclaskey, but that it would be in full satisfaction of the

judgment, once entered. Plaintiff's counsel said he would check to see if that was agreeable to his client.

On May 6, Plaintiff responded, declining the offer. Instead, Plaintiff stated that in addition, a third party not involved in the lawsuit would need to transfer its rights in certain 3D-seismic data to Plaintiff. Or, in the alternative, that only Defendant's interest would be included in the partition sale.

On May 13, 2022, Defendant counsel rejected the May 6 offer and again offered to enter a consent judgment. It attached a proposed consent judgment, which granted Plaintiff judgment on all of its claims. It also agreed to assign the funds being held in suspense by Maclaskey, and included a provision that all proceeds from the partition sale attributable to its interest would be paid to Plaintiff would be credited against Plaintiff's judgment.

In a May 24 telephone conference, Plaintiff's counsel again stated it had not asserted a partition claim and never pled that the Joint Property was subject to partition and should be sold. He argued that if Plaintiff had a partition claim it was "one of many" and that "Stinson doesn't get to dictate" how Plaintiff proceeds on its claims.

## II.     Legal Standard

The law favors agreements to settle disputes.[3]  "Kansas law supports the enforcement of settlement agreements where the parties manifest agreement to be bound as to the material terms

---

[3] *See Lowery v. County of Riley*, 738 F.Supp.2d 1159, 1168 (D. Kan. 2010) (citing *Advantage Properties, Inc. v. Commerce Bank*, 2000 WL 1694071 at *2 (10th Cir. 2000)).

of their bargain."[4]  The trial court has the power to summarily enforce a settlement agreed by the litigants while the litigation is pending before the Court.[5]

Because a settlement agreement is a contract, "[i]ssues involving the formation, construction, and enforceability of a settlement agreement are resolved by applying state contract law."[6]  The Court may resolve the issue by an evidentiary hearing if "the parties raise material factual disputes over whether an agreement has been reached and what the terms of the agreement are."[7]  But "a hearing is not necessary [where] there is no dispute of material fact bearing on the existence of the settlement or its terms."[8]  Thus, "a contracting party is bound by an agreement to which he assents, where the assent is uninfluenced by fraud, violence, undue influence, or the like, and he will not be permitted to say he did not intend to agree to its terms."[9]

Under Kansas law, consent judgments are a form of settlement which are adopted by the court as an order:

> Consent judgments (decrees) are a hybrid in the sense that they are at once both contracts and orders.  They are construed largely as contracts but are enforced as orders.  A consent judgment represents a compromise between parties who have waived their right to litigation.  The parties, in the interest of avoiding the risk and expense of suit, have given up something they might have won had they proceeded with litigation.  For these reasons the scope of a consent judgment must be discerned within its four corners and not by reference to what might

---

[4] *Winglet Tech., LLC, v. Felker*, 2020 WL 290954, at *5 (D. Kan. 2020) (citation omitted).

[5] *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993).

[6] *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000).

[7] *Tsys Merchant Sols., LLC v. Pipeline Prods., Inc.*, 2016 WL 4702419, at *3 (D. Kan. 2016) (citations omitted).

[8] *Towers v. Wyandotte Cnty. Sheriff's Off.*, 2018 WL 6324867, at *5 (D. Kan. 2018)

[9] *Sutherland v. Sutherland*, 187 Kan. 599, 167 P.2d 776, 785 (1961) (citing *Maltby v. Sumner*, 169 Kan. 417 219 P.2d 395, 404 (1950)).

satisfy the purposes of one of the parties. The court is not entitled to expand or contract the agreement of the parties as set forth in the consent judgment. The explicit language of the judgment is to be given great weight. Deference is to be paid to the plain meaning of the language of a judgment and the normal usage of the terms selected. A consent judgment should be strictly construed to preserve the bargained for position of the parties.[10]

### III.   Analysis

The Court finds that the Consent Judgment submitted by Defendant should be entered, as this gives Plaintiff relief on all the claims it has advanced in the action, and it reflects the parties' agreement as expressed in their communications. As explained more fully below, those communications establish that the understanding was that Defendant would dismiss its counterclaims and the parties "agree[d] to the entry of a consent judgment based on the claims asserted by the plaintiff in this action."

The Court will deny Plaintiff's motion to enforced the purported settlement agreement reflected in a proposed Journal Entry of Judgment attached to its motion. The proposed Journal Entry includes some relief (the distribution of funds held by Maclaskey Oil Services) which Plaintiff has not separately presented as a claim in this action, while also not addressing all of the claims which were made, such as the request for partition under K.S.A. 60-1003. Accordingly, the proposed Journal Entry falls outside of the parties' agreement "to the entry of a consent judgment based on the claims asserted by the plaintiff in this action."

Plaintiff complains that Defendant's counsel "refused to sign the journal entry," but that is the point. The proposal altered what had been agreed, and Plaintiff has given no indication that this proposed journal entry was ever sent to Defendant. The Journal Entry cited in the

---

[10] *Beaver v. Kingman*, 246 Kan. 145, 785 P.2d 998, 1001 (1990) (citations omitted).

motion, as Plaintiff otherwise observes, is simply "the most recent draft," one unilaterally prepared by Plaintiff, and Defendant affirmatively represents that the proposal was "neither sent nor received by DDS."

Plaintiff argues that it only wanted to foreclose its lien on the Defendant's 40% in the Joint Property. But this is not what was pled, and Plaintiff has not cited to any pleading which would limit its claims in this way.

Plaintiff has also failed to show the existence of any settlement agreement, outside the agreement for a Consent Judgment of "the claims" Plaintiff had advanced. The supposed settlement agreement it now presents is premised on its own proposed Journal Entry of Judgment, which Plaintiff claims is "identical" to one proposed by Defendant. But that proposed Journal Entry was not only not presented to Defendant, it is materially different from Defendant's proposal, precisely because it omits any ruling on Plaintiff's claim for partition. As there is no evidence showing Defendant agreed to the supposed settlement, the Court will deny Plaintiff's motion.

Plaintiff argues that the partition would conflict with its lien claim. The Court finds no conflict. Plaintiff originally asserted that its lien interests "include[] include *all of the Joint Property*." (Emphasis added). In its "Restatement of Claims Previously Pled," Plaintiff argued its lien interest "should continue to attach to the Joint Property until such time as the Lien is fully satisfied," and asked for impoundment of proceeds from the partition.

The parties agreed to a Consent Judgment which gave Plaintiff relief on *all* its claims. The Consent Judgment submitted by Defendant does not interfere with the lien claims as stated in the pleadings. The Partition and Lien Enforcement claims are explicitly denominated as

"Claims" in Plaintiff's "Restatement." Those claims are given their own sequential Roman numerals, indicating Plaintiff's intent to present them as additional claims.

Plaintiff's current request to liquidate only *Defendant's* interest in the Joint Property directly conflicts with its claim for relief, which alleged that the Joint Property could not be economically partitioned in kind, and thus expressly asked that "the Joint Property be appraised and the same be ordered sold, and the proceeds divided according to the respective ownership interests of the parties." Similarly, in the Restatement's concluding "WHEREFORE" clause, Plaintiff expressly asked that the "the ownership of *it and* DDS[] in and to the Joint Property be determined by the Court and partitioned." (Emphasis added).

Plaintiff's claims expressly include the claim that the interests of both parties in the Joint Property should be partitioned, appraised and sold. Plaintiff and Defendant agreed to a Consent Judgment for all, not some, of Plaintiff's claims.

Finally, Plaintiff argues that Defendant should not have the ability to dictate how it might execute on its judgment. But Plaintiff has no judgment yet, and it is entitled to any recovery only pursuant to its agreement with Defendant for a consent judgment as to "the claims" it had advanced in the case. One of the claims Plaintiff advanced is partition. The proposed Consent Judgment submitted by Defendant does that, and does nothing more that give effect to the parties' agreement.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Enter Consent Judgment (Doc. 44) is hereby **GRANTED**, Plaintiff's Motion to Enforce Settlement Agreement (Doc. 45) is **DENIED**.

IT IS SO ORDERED.

Dated this 29th day of September, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE